1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   EASTERN DISTRICT OF WASHINGTON

7  WESTERN HERITAGE
   INSURANCE COMPANY, an Arizona          NO:  13-CV-0204-TOR
8  Corporation,
                                          ORDER RE: CROSS-MOTIONS FOR
9                        Plaintiff,       PARTIAL SUMMARY JUDGMENT

10        v.

11 DOUG and DUSTY CANNON,
   individually and the marital
12 community, as Assignees of Cook
   Custom Homes,
13
                        Defendants.
14

15        BEFORE THE COURT are Plaintiff/Counter Defendant Western Heritage

16 Insurance Company's Motion for Partial Summary Judgment (ECF No. 23), and

17 Defendant/Counterclaimant Doug and Dusty Cannon's Motion for Partial

18 Summary Judgment (ECF No. 27).  This matter was heard with oral argument on

19 July 10, 2014.  Mark N. Thorsrud appeared on behalf of the Plaintiff.  Kevin. W.

20

Roberts and Adam J. Chambers appeared on behalf of Defendant. The Court has reviewed the briefing and the record and files herein, and is fully informed.[1]

BACKGROUND

This case concerns a dispute over insurance policy coverage. Defendants/Counterclaimants Doug and Dusty Cannon ("the Cannons") engaged Cook Custom Homes ("Cook") to build a home for them on a site they had purchased from a developer. Plaintiff Western Heritage Insurance Company ("Western Heritage") insured Cook with three consecutive policies over three years. After serious cracks and other defects appeared in the Cannons' newly built home, they sued Cook. Western Heritage tendered a defense of Cook, but ultimately Cook settled with the Cannons, assigning them all rights to recover from Western Heritage. In the present action, Western Heritage sued Cook[2] and the Cannons for a declaratory judgment that it was not liable under the policies for the damage. The Cannons counterclaimed for, *inter alia*, breach of contract. The

_____

[1] Western Heritage filed a supplement to its motion for partial summary judgment on July 14, 2014, after oral argument for the motion. ECF No. 63. Because the Court made no request for such a supplement, and the Cannons had no opportunity for a reply, the Court has disregarded this submission in considering the motions now before it.

[2] Cook Custom Homes was terminated from the present action on August 26, 2013.

ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 2

parties here cross-move for summary judgment on the competing breach of

contract and declaratory judgment claims.

FACTS

Defendants/Counterclaimants Doug and Dusty Cannon own a home built by

Cook Custom Homes, a Washington corporation. Plaintiff/Counter Defendant

Western Heritage insured Cook under three consecutive commercial general

liability policies relevant to the present action: SCP0547351, from January 29,

2005 through January 29, 2006 ("Policy One"); SCP0592739, from January 29,

2006 through January 29, 2007 ("Policy Two"); SCP0642217 from January 29,

2007 through January 29, 2008 ("Policy Three").

In 2005, the Cannons contracted with Cook to build their home on a lot in

the Forest Hills Development in Spokane, Washington. Cannon Statement of Facts,

ECF No. 28 at 2; Western Heritage Statement of Facts, ECF No. 24 at 1.  Howes

Quality Development Company, Inc. ("Howes") had developed and graded the lot,

which was located near the slope of a hill. ECF No. 24 at 4, 8. Cook began

construction on the property in September 2005. ECF No. 28 at 3; ECF No. 24 at

2. In September 2005, Cook used a subcontractor, Hattenberg Excavating, Inc., to

excavate the lot and add several hundred yards of fill soil to extend the building

pad. ECF No. 28 at 3. In October 2005, Cook's subcontractor, Smiley's

Construction Company, Inc., constructed the basement foundation, which

Hattenburg backfilled. ECF No. 28 at 4. Cook did not hire a soil engineer at any time during the construction process. ECF No. 28 at 3.

In March 2006, the Cannons began to move into the residence while construction was still in progress. ECF No. 28 at 4. At this time, they noticed cracks throughout the foundation, basement slab, ceilings, and driveway. *Id*. A certificate of occupancy was issued in May 2006. *Id*. In September 2006, the Cannons ordered a residential home inspection, which noted serious damage, including significant cracks in the walls, shifting throughout the siding, and gaping cracks in the basement slab. *Id*.; ECF No. 24 at 3. The inspector attributed the defects to settlement and soil subsidence. ECF No. 24 at 3. Cook attempted to repair these problems from the fall of 2006 through the spring of 2007, but was unable to do so. ECF No. 28 at 4.  As a result of the damage, the Cannons' home is uninhabitable. ECF No. 28 at 5.

In December 2010, the Cannons sued Cook in Spokane County Superior Court. ECF No. 29 at 5. The complaint details the damage to the house, noting, *inter alia*, that the flooring is pulling away from the wall, and that parts of the foundation have become elevated, leading to unsafe stresses in the basement walls. ECF No. 28 at 5. In March 2012, the Cannons added the developer Howes as a defendant in the lawsuit. ECF No 28 at 5. Cook's insurer, Western Heritage,

denied coverage of the Cannons' claim against Cook, but defended Cook subject to a reservation of rights. ECF No. 28 at 5.

During litigation of this action, the Cannons' and Cook's experts agreed that the damage to the Cannons' house was caused by subsidence, and Cook's expert concluded that the structural damage to the house was the result of settlement from subsidence of loose fill soils and poorly constructed site slopes. ECF No. 24 at 8.

In the spring of 2013, Cook agreed to a confession of judgment and assignment of its rights against Western Heritage subject to the Cannons' covenant not to execute the judgment against Cook. ECF No. 28 at 6. On May 15, 2013, the Cannons provided the required statutory 20-day notice of intent to bring an action against Western Heritage to enforce Cook's assigned rights under the Washington State Insurance Fair Conduct Act, RCW 48.30, *et seq.*, in addition to other causes of action. On May 31, 2013, Western Heritage sued Cook and the Cannons in this Court, praying for declaratory judgment that Western Heritage owes no duty to pay any amount to the Cannons and for attorney fees and costs. ECF No. 1.

In the motions now before the Court, the parties cross-move for summary judgment. Western Heritage contends that six exclusions apply to preclude the Cannons from recovering under the policies issued to Cook; the Cannons argue that all these exclusions are inapplicable as a matter of law. Western Heritage maintains that the Cannons' counterclaims for breach of contract and declaratory

ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 5

relief should be dismissed, and that the Court should enter a partial declaratory

judgment that there is no coverage under the policies for the asserted claim. ECF

No. 23-1 at 2-3.

DISCUSSION

**A. Summary Judgment Standard**

Summary judgment may be granted to a moving party who demonstrates

"that there is no genuine dispute as to any material fact and that the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party

bears the initial burden of demonstrating the absence of any genuine issues of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to identify specific genuine issues of material fact

which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the jury

could reasonably find for the plaintiff."  *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the

outcome of the suit under the governing law.  *Id.* at 248.  A dispute concerning any

such fact is "genuine" only where the evidence is such that a reasonable jury could

find in favor of the non-moving party.  *Id.*  In ruling upon a summary judgment

motion, a court must construe the facts, as well as all rational inferences therefrom,

in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

## B. The Insurance Policies

Western Heritage contends that Policy Three does not apply to the damage at issue, and that six exclusions apply to preclude the Cannons from recovering under the policies issued to Cook. ECF No. 23 at 4-7. The Cannons contend that all these exclusions are inapplicable as a matter of law. ECF No. 27 at 11.

Insurance policies are construed as contracts, and interpretation of an insurance contract is a question of law. *Quadrant Corp. v. Am. States Ins. Co.,* 154 Wash. 2d 165, 171 (2005). To prevail on a breach of contract claim under Washington law, a plaintiff must prove (1) the existence of a valid contract; (2) the breach of a duty imposed by a contract; and (3) damages resulting from the breach. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.,* 78 Wash. App. 707, 712 (1995). If the policy language is clear and unambiguous, the Court must enforce it as written; the Court may not modify it or create ambiguity where none exists. *Quadrant*, 154 Wash. 2d at 171. "[A] clause is ambiguous only when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Id*. (internal quotation omitted). The Court may rely on extrinsic evidence of the intent of the parties to resolve the ambiguity. *Id.* "Any ambiguity remaining after

examination of the applicable extrinsic evidence is resolved against the insurer and in favor of the insured." *Id.* "But while exclusions should be strictly construed against the drafter, a strict application should not trump the plain, clear language of an exclusion such that a strained or forced construction results." *Id.*

Insurers are not required to pay claims not covered by the contract or take other actions inconsistent with the contract. *Coventry Associates v. Am. States Ins. Co.,* 136 Wash. 2d 269, 280 (1998). "The duty to indemnify exists only if the policy *actually covers* the insured's liability," but "[t]he duty to defend is triggered if the insurance policy *conceivably covers* allegations in the complaint." *Am. Best Food, Inc. v. Alea London, Ltd.,* 168 Wash. 2d 398, 404 (2010).

Determining whether there is coverage under a comprehensive general liability policy is a two-step process. *Overton v. Consol. Ins. Co.*, 145 Wash. 2d 417, 431 (2002). The insured first has the burden to show its loss is within the scope of the policy's insured losses. *Id.* If it does so, the insurer can avoid liability by showing the loss is excluded by specific policy language. *Id.* at 431-32. *See also Hayden v. Mut. of Enumclaw Ins. Co.,* 141 Wash. 2d 55, 64 (2000) ("[T]o determine whether the duty to defend exists, this court examines the policy's insuring provisions to see if the complaint's allegations are conceivably covered. If covered, this court must then determine whether an exclusion clearly and unambiguously applies to bar coverage.").

ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 8

1.  <u>Whether the Loss Is Within the Scope of the Policy</u>

The Court first examines whether the Cannons have shown Cook's losses were within the scope of the policies' insured losses. All three policies contain a provision that Western Heritage "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." ECF No. 25-1 at 12; ECF No. 25-2 at 12; ECF No. 25-3 at 12. The policies provide that:

> the insurance applies to "bodily injury" and "property damage" only if: (1) "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; (2) The "bodily injury" or "property damage" occurs during the policy period; and (3) Prior to the policy period no insured…knew that the "bodily injury" or "property damage" had occurred [or begun to occur] in whole or in part.

ECF No. 25-1 at 12; ECF No. 25-2 at 12; ECF No. 25-3 at 12 (bracketed phrase supplied by Section I, part 1(d)(3)).

The Cannons conceded at oral argument that Policy Three did not apply to the loss in question because the damage was discovered in March 2006, before the inception of Policy Three's period of coverage. Accordingly, the insured (Cook) "knew that the… 'property damage' had occurred in whole or in part" before Policy Three took effect on January 29, 2007; thus, by its terms, that policy does not apply. *See* ECF No. 25-3 at 12.

///

ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 9

2.  <u>Whether the Loss is Excluded</u>

The Court next considers whether any exclusion under the remaining two policies prevents the Cannons from recovering from Western Heritage for the claimed property damage. Western Heritage contends that six exclusions apply to preclude coverage: (1) the Subsidence Exclusion; (2) exclusion j(5) for "Performing Operations"; (3) exclusion j(6) for "Your Work"; (4) exclusion 1 for "Products-Completed Operation Hazard"; (5) the Professional Liability Exclusion; and (6) the Continuing Damage Exclusion. ECF No. 23 at 4-7.

*a. The Subsidence Exclusion*

Western Heritage Policy One (January 29, 2005, through January 29, 2006) contains the following exclusion:

> This policy does not apply to "bodily injury," "personal and advertising injury" or "property damage" arising out of or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, whether arising from natural causes or resulting from operations of the Named insured or any other subcontractor of the Named insured.

ECF No. 25-1 at 36.

Western Heritage contends that the Subsidence Exclusion bars its obligation during Policy One's coverage period. ECF No. 23 at 15.

The Cannons argue that the exclusion in Policy One does not apply because it contains the undefined term "operations" which requires construal in favor of coverage. ECF No. 27 at 17. The Cannons contend that they reasonably understood

ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 10

"operations" to mean ongoing operations. ECF No. 27 at 18.[3] They argue that the exclusion would apply if Cook dug a hole near the Cannon's house during construction and the digging caused a wall of the house to collapse during construction. *Id*. Because the Cannons' damages occurred after the operation of bringing in the defective fill had been completed—not during the ongoing operation of adding fill to extend the building pad—the exclusion, they argue, does not apply. *Id*.

The Court finds this argument unpersuasive. "The terms of the policy must be understood in their plain, ordinary, and popular sense." *N. Pac. Ins. Co. v. Christensen*, 143 Wash. 2d 43, 48 (2001). If the policy language is clear and unambiguous, the Court must enforce it as written; the Court may not modify it or create ambiguity where none exists. *Quadrant*, 154 Wash. 2d at 171. Nor may a court modify or supplement the policy with additional language. *Mut. of Enumclaw Ins. Co. v. Grimstad-Hardy*, 71 Wash. App. 226, 235 (1993). *See also Hartford Ins. Co. v. Ohio Cas. Ins. Co.,* 145 Wash. App. 765, 778 (2008) ("We therefore conclude that since the additional endorsement for Roosevelt in the American States policies was limited to "ongoing operations," American States was correct in its argument that the additional insured endorsement "limited Roosevelt's

_____

[3] The Court observes that the Cannons' understanding is irrelevant as they were not a party to the insurance contract.

ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 11

1    coverage to property damage arising out of the subcontractors' work in progress

2    only."). Here, the exclusion states that it applies to subsidence "resulting from"

3    operations. Such language, in its plain and unadorned common use, indicates that it

4    excludes damage incurred as a result of subsidence for a variety of reasons,

5    including from the operations of the insured. There is no indication that the policy

6    intended to exclude subsidence caused only by the ongoing operations of the

7    insured. Such a limitation is not explicitly stated, and the Court will not supply

8    language not in the policy. Thus, the Subsidence Exclusion operates to exclude

9    damages from subsidence of the land during Policy One's coverage period.

10          As the Cannons point out, Policy Two does not contain the Subsidence

11    Exclusion. Accordingly, Policy Two is the only remaining policy under which the

12    Cannons (pursuant to the assignment from Cook) could seek indemnification for

13    the claimed damage.

14          *b.  J(5)Performing Operations Exclusion and J(6)Your Work Exclusion*

15          All of the Western Heritage Policies—including Policy Two—issued to

16    Cook contain the following exclusion (the "Performing Operations Exclusion" or

17    "Exclusion j(5)"):

18          This insurance does not apply to:
             …
19          j. Damage To Property

20             "Property damage" to:
                . . .

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations…"

ECF No. 25-2 at 15-16.

All of the Western Heritage Policies issued to Cook also contain the following exclusion (the "Your Work Exclusion" or "Exclusion j(6)):

This insurance does not apply to:
…
j. Damage To Property

"Property damage" to:
…
(6)That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
…
Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

ECF No. 25-2 at 16. Under the policy, "your work" includes "[w]ork or operations performed by you or on your behalf…." ECF No. 25-2 at 26.

Western Heritage contends that the policies covering the periods in which any property damage may have occurred to the Cannons' house contain faulty workmanship exclusions, including the Performing Operations and Your Work Exclusions, which apply to exclude coverage for any "property damage" to the Cannons' home during Cook's operations. ECF No. 23 at 11. The Court agrees. As

ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 13

Western Heritage argues, Washington law indicates that exclusions such as these operate to bar coverage for damages incurred on the construction site during and as a result of construction operations. *See Vandivort Const. Co. v. Seattle Tennis Club*, 11 Wash. App. 303 (1974) ("Endorsement No. 7(2)(iv)(a) which excludes coverage for damage to 'that particular part of any property, . . . upon which operations are being performed by . . . insured . . .' bars Vandivort's recovery. … The plain meaning of the language covers the situation here. Vandivort was performing operations on the property and the injury here for which damages are claimed arose out of those operations."); and *Canal Indem. Co. v. Adair Homes, Inc.*, 737 F. Supp. 2d 1294, 1301 (W.D. Wash. 2010), aff'd, 445 F. App'x 938 (9th Cir. 2011).

In *Canal*, the district court held that "[t]he ongoing operations exclusion bars coverage for 'property damage to [t]hat particular part of real property which you or any contractors or subcontractors ... are performing operations if the property damage arises out of those operations ....'" *Canal*, 737 F. Supp. 2d at 1301. The court explained that "Washington courts have interpreted the language of an ongoing operations exclusion to apply to the insureds' entire operations." *Id*. "This exclusionary language is designed to exclude coverage for defective workmanship by the insured builder causing damage to the construction project." *Id*. at 1302. *See also Harrison Plumbing & Heating, Inc. v. New Hampshire Insurance Group*, 37

Wash. App. 621, 626 (1984) (holding that ongoing operations exclusion ensures

that an insured is not indemnified for damages resulting because the insured

furnished defective materials or workmanship). As the district court in *Canal*

explained,

> this interpretation of the exclusions is entirely consistent with commercial
> general liability policies. Commercial general liability policies are designed
> generally to provide coverage for a number of risks, including employee
> injuries while on the work site and physical damage to property other than
> the work of the insured. The two exclusions for damages to the work of the
> insured during construction and after completion are common "business
> risk" exclusions, designed to prevent the commercial general liability policy
> from being considered a performance bond, product liability insurance, or
> malpractice insurance.

*Canal*, 737 F. Supp. 2d at 1302. On appeal, the Ninth Circuit agreed that the

insurance company had no "duty to defend against property damage claims that

occurred during construction pursuant to the insurance policies' j(5) and j(6)

business risk exclusions." *Canal Indem. Co. v. Adair Homes Inc.,* 445 F. App'x

938, 940 (9th Cir. 2011) (unpublished). The court explained that "[c]overage was

barred because these exclusions applied to all of Adair Homes' ongoing operations

during the construction of the residence, as well as to direct damages stemming

from the alleged defective construction." *Id*.

Here, as in *Canal*, the damage caused by Cook or its subcontractors is

precisely the type of damage excluded by exclusions j(5) and j(6). These

exclusions bar coverage to "that particular part of real property on which you or

your contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations" or to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Thus, by the exclusions' plain terms, the insurance is not applicable to damage to the insured's work caused by the insured in the course of the insured's work. Here, the undisputed facts establish that Cook contracted with the Cannons to build a house for them. The negligence of Cook and its subcontractors in placing the improper fill soil and placement of the foundation on that unstable soil—tasks that were Cook's "work"—resulted in subsidence that caused severe damage to the home itself. Thus, the house and fill soil comprise the "particular part" of property damaged because Cook's work "was incorrectly performed on it" and damaged while Cook was "performing operations"; as such, the damage falls within the plain language of these two exclusions.

The Cannons contend that these exclusions are inapplicable as a matter of law because the expert evidence submitted during the state lawsuit attributed damage to the Cannons' house to the inadequate *supporting soils,* which is not the same "particular part of real property" as the *house*. ECF No. 27 at 13.The Cannons argue that the underlying fill soil was the "particular part" of the Cannons' property on which Cook performed the defective work causing the

1   damages at issue, but this lawsuit claims damages to the overlying structure. ECF

2   No. 27 at 14. Thus, they maintain, the exclusion only pertains to the work on the

3   supporting soils, and the damage to the house should fall outside the exclusion. At

4   oral argument, the Cannons' counsel suggested that construing "that particular part

5   of real property" as the whole project renders it meaningless.

6        The Court disagrees. The damage was to the whole building project Cook

7   undertook. Cook's failure to use the proper soil and placement of the foundation on

8   that unstable soil, caused the damage to the house Cook built. The outcome could

9   be different under different circumstances: If Cook had, for example, contracted to

10  build an addition to an existing home and similar faulty fill had caused subsidence

11  that damaged the addition and the existing house, the exclusion would apply to the

12  "particular part of real property" on which Cook's work had been performed, i.e.,

13  the addition. The exclusion might not apply to damage to the existing structure,

14  because it was not the particular part of real property comprising the insured's

15  work. Thus, the phrase "that particular part" has meaning in many possible

16  settings. But in this case, since Cook was hired to build the entire home and

17  performed work on the fill soil, Cook's work comprises the entire house building

18  project and "that particular part" refers to the entire project.

19       Nor does the Court find the sources cited by the Cannons convincing, as

20  they are either factually distinguishable or not binding precedent. For instance, in

ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 17

*Desert Mountain Properties Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz.

194 (2010), aff'd, 226 Ariz. 419 (2011), discussed at length during oral argument,

soil issues due to poor compaction of fill material caused serious damage to 50

homes in a subdivision which were sold by Desert Mountain, a developer.  The

homes were constructed by a general contractor.  Desert Mountain paid $200,000

per home to fix the soil problems and repair the homes. In the lawsuit involving

Desert Mountain's attempt to recover from its insurer, the insurer argued that an

exclusion like the one at issue here precluded coverage for repairing damage

caused by the faulty soil compaction.  While recognizing a split among authorities,

the Arizona court disagreed and held that:

> By its terms, the exclusion applies only to the repair of "that particular part
> of any property ... made ... necessary by reason of faulty workmanship
> thereon." Given the narrow scope of the exclusion, we conclude it applies
> only to the repair of defective workmanship and not to the repair of damage
> that resulted from the defective workmanship. Because the endorsement
> excludes only damage to property "by reason of faulty workmanship
> thereon," the exclusion did not bar coverage of damage to non-defective
> property resulting from the faulty soil compaction in this case.

*Desert Mountain*, 225 Ariz. at 206.  But *Desert Mountain* is an Arizona case

applying Arizona—not Washington—law, and is factually distinguishable. The

court first observed that a portion of the exclusion did not apply because "Desert

Mountain did not build the homes (or compact the soil in preparation for the

homes), the defective work was not "work performed by the named insured"

1  within the meaning of that provision." *Id*. at 205.  Next, *Desert Mountain* followed

2  other authorities that interpreted this type of endorsement to exclude only damage

3  to the defective component of the product (the poorly compacted soil) but not

4  damage *resulting from* the defective component (cracks in the floors, walls, roofs

5  and patio slabs of houses).  The court then held that "[b]ecause the endorsement

6  excludes only damage to property "by reason of faulty workmanship thereon," the

7  exclusion did not bar coverage of damage to non-defective property resulting from

8  the faulty soil compaction in this case." *Id*. at 206.

9      Here, Cook was the general contractor responsible for both the soil work and

10  home building.  Cook was not a developer like Desert Mountain was.

11      The Court also declines to be guided by *Desert Mountain* when Washington

12  courts and federal courts applying Washington law have held otherwise. *See*

13  *Canal*, 737 F.Supp.2d 1294 (with respect to similar exclusion, holding that "the

14  plain and unambiguous language of the ongoing operations exclusion bars

15  coverage for the Pearsons' property damages occurring during construction of the

16  residence."); *Vandivort,* 11 Wash.App. 303 (exclusion for damage caused by

17  ongoing operations not limited to portion of property that was subject to

18  operations, but barred coverage for all damages caused by operations).

19      Thus, damage occurring during the course of performing operations and

20  attributable to Cook's work is excluded under exclusions j(5) and j(6).

ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 19

c.  *"Products-Completed Operation Hazard" Exclusion*

Western Heritage also contends that any damage to the Cannons' home occurring after the Cook completed its operations on May 8, 2006, falls within the scope of the Products-Completed Operation Hazard Exclusion. ECF No. 23 at 14. The Your Work and Performing Operations Exclusions discussed above operate to bar coverage for the insured's defective work on its own project *while* operations are continuing, but Western Heritage also contends that the Products-Completed Operation Hazard Exclusion bars coverage of damages incurred *after* the completion of construction, when the Cannons assumed possession of the home. ECF No. 23 at 13-14. The Cannons respond that the damages to their home began prior to and continued after the home's completion, and as such are not subject to the "products-completed operations hazard" exclusion. ECF No. 27 at 14-15. They argue that because damages occurred and were known before completion, they cannot be regarded as a products-completed operations hazard. *Id*. at 16.

The Western Heritage Policy Two contains the following exclusion:

> This insurance does not apply to:
>
> l. Damage To Your Work
>
>> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

ECF No. 25-2 at 35 (Endorsement CG 22 94 10 01).  The "Products-completed

ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 20

operations hazard" includes all property damage "arising out of 'your product' or 'your work' except…[w]ork that has not yet been completed or abandoned." ECF No. 25-2 at 25. The work will be

> deemed completed at the earliest of the following times: (a) When all of the work called for in your contract has been completed. (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site. (c) When the part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

ECF No. 25-2 at 25.

The Court finds that, under its plain language, the Products-Completed Operations Hazard Exclusion applies to exclude coverage of damages occurring after completion of the project. Here, the damage arose out of the fill soil work Cook performed during the course of operations. Any damage from defective fill continuing after completion of the project is by definition property damage "arising out of 'your product' or 'your work' except…[w]ork that has not yet been completed or abandoned." Thus, it is squarely within the Products-Completed Operations Hazard. *See Canal*, 445 F. App'x at 939-40 ("Canal presented undisputed evidence that the Pearsons' property damage and bodily injury claims occurred after Adair Homes completed the construction of the residence. Summary judgment was warranted because the insurance policies' products-completed

operations hazard (PCOH) exclusion unambiguously barred coverage for any post-construction claims.").

The Cannons argue that because the damage was known before the completion date (which the parties agree is the date the certificate of occupancy was issued), it was not a products completed operations hazard. ECF No. 41 at 16. But no binding or persuasive authority is offered for this argument.

Having found above that only Policy Two applies to the damage at issue, and that the damage occurring during operations as a result of operations is excluded, the Court can find no reason why damages should not be subject to the products-completed operations hazards simply because they were observed before completion. Damages occurring during operations (between the inception of Policy Two and the completion date in May) have already been found to be excluded; thus, that such damages could partially be put into the category of pre-completion damages does not save them from the exclusion.

Accordingly, the Court finds that the Products-Completed Operations Hazard Exclusion bars coverage of any damages occurring after completion as well.

CONCLUSION

Policy Three is inapplicable by its terms because the damages were known before inception of the policy period. All damages under Policy One are subject to

ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 22

1    the Subsidence Exclusion. And all alleged damages under Policy Two are subject

2    to exclusions j(5), j(6), and the Products-Completed Operations Hazard. Thus, the

3    Cannons have no grounds under the policy for recovery for damages incurred by

4    reason of the faulty fill soil. Having so found, the Court declines to address the

5    parties' arguments with respect to other potential exclusions.

6         Accordingly, Western Heritage's request to dismiss the Cannons' second

7    counterclaim for breach of contract and seventh counterclaim for declaratory relief

8    (indemnity obligation) is granted, *see* ECF No. 23-1 at 2-3, and the Court will enter

9    a partial declaratory judgment on Western Heritage's claim that there is no

10   coverage under the policies for the claim asserted by the Cannons against Cook.

11   **ACCORDINGLY, IT IS HEREBY ORDERED:**

12        1.  Plaintiff/Counter Defendant Western Heritage Insurance Company's

13            Motion for Partial Summary Judgment (ECF No. 23) is **GRANTED**.

14            a.  Plaintiff/Counter Defendant Western Heritage is not in breach of

15                contract and owes no duty to pay the covenant judgment under the

16                policies.

17            b.  Defendant/Counterclaimant Doug and Dusty Cannon's Second

18                Cause of Action for Breach of Contract and Seventh Cause of

19                Action for Declaratory Relief (indemnification) are **DISMISSED**.

20

ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 23

1      2.   Defendant/Counterclaimant Doug and Dusty Cannon's Motion for

2           Partial Summary Judgment (ECF No. 27) is **DENIED**.

3           The District Court Executive is hereby directed to enter this Order and

4      provide copies to counsel.

5           **DATED** July 24, 2014.

6      

7                                    THOMAS O. RICE
                                United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20